1 Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2 Yana A. Hart (SBN: 306499)
yana@westcoastlitigation.com
3 **Hyde & Swigart, APC**
4 2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
5 Telephone: (619) 233-7770
6 Fax: (619) 297-1022

[Additional Attorneys on Caption Page]

*Attorneys for Plaintiff*
Ophelia Augustine

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| **OPHELIA AUGUSTINE,** | Case No.: 3:18-cv-01120-H-JMA |
|---|---|
| Plaintiff, | **FIRST AMENDED CLASS COMPLAINT FOR DAMAGES PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.** |
| v. | |
| **TLC RESORTS VACATION CLUB, LLC, and DOES 1-20,** | |
| Defendants. | **Jury Trial Demanded** |

///

# INTRODUCTION

1. Ophelia Augustine ("Plaintiff") brings this action for damages, and any other available legal or equitable remedies, resulting from the illegal actions of TLC Resorts Vacation Club, LLC ("Defendant"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

2. The TCPA was designed to prevent calls and messages like the one described within this complaint and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls that are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

    *Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id.* At §§ 12-13. *See also, Mims*, 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction under 47 U.S.C. § 227, et seq. and 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in California, corresponding with its California clients, collecting member dues on behalf of itself, and advertising job opportunities, as it did in this case. Further, Defendant's collection efforts were directed at the forum, as illustrated below.

8. A substantial part of the events or omissions giving rise to this claim occurred in San Diego, California against Plaintiff, who resides in the County of San Diego, State of California. Therefore, venue is proper.

9. At all times relevant, Defendant conducted business within the County of San Diego, State of California.

## PARTIES

10. Plaintiff is, and at all times mentioned herein was, a natural person residing in the County of San Diego, in the State of California.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant is a limited liability company incorporated and existing under the laws of Nevada. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendant conducted business in the State of California, including the County of San Diego.

12. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. §153 (39).

## FACTS

13. Sometime before June 29, 2017, Plaintiff allegedly incurred a financial obligation (the "Debt") to Defendant. The Debt allegedly arose from time share dues that were owed to Defendant.

14. Because this complaint alleges violations of the TCPA, the validity and circumstances surrounding the Debt are irrelevant and will be discussed only to provide context.

15. After Plaintiff incurred the Debt, Plaintiff filed for bankruptcy.

16. On October 1, 2017, a bankruptcy notice was mailed to Defendant. This notice advised Defendant that Plaintiff had filed for bankruptcy, and that the Debt had been discharged. The notice further instructed Defendant to cease further communication regarding the Debt and to stop further collection efforts on the Debt.

17. Plaintiff then sent two emails to Defendant on October 17, 2017 and December 19, 2017. Both emails instructed Defendant stop contacting Plaintiff in regard to

the Debt. In addition, Plaintiff called Defendant on numerous occasions and instructed Defendant to stop contacting her.

18. Notwithstanding these clear, unequivocal, written instructions, Defendant continued to text Plaintiff's cellular telephone.

19. Starting on or around November 10, 2017, Defendant sent numerous text messages from telephone number 670-76 to Plaintiff's cellular telephone ending in "9532." These text messages contained one of two messages. The first stated that "[y]our TLC Resorts Member Dues are now delinquent. To avoid late fees and the possible suspension of your member benefits [sic] 702-749-8342 Reply STOP to opt out." The second had nothing to do with the Debt, but was instead a marketing ploy: "[t]his is Michelle, We are H!ring-Now [sic] … any.es/rez." Defendant made both of these text messages using telephone number 670-76. This second text messages came from the same telephone number as the first and was on the same text string as the first.

20. These text messages were conveyed using an automatic telephone dialing system ("ATDS"), as defined by 47 U.S.C. § 227(a)(1). This is evidenced by the impersonal nature of the text messages. For example, they do not refer to Plaintiff by name nor reference her specific account. Rather, they are generic messages that could apply to anyone. In addition, the telephone number 670-76, is indicative of an ATDS.

21. With respect to Defendant's text messages regarding the Debt, the bankruptcy notice, Plaintiff's emails, and Plaintiff's telephone calls definitively revoked whatever "prior express consent" Defendant may have had to text Plaintiff's cellular telephone. Regarding the text message about the job opportunity, Plaintiff never gave Defendant consent, express or otherwise, to text her concerning this matter.

///

22. Defendant's text messages to Plaintiff's cellular telephone number regarding the a job opportunity were for marketing purposes. None of Defendant's text messages were for the purpose of an emergency.

23. Upon information and belief, the ATDS used by Defendant has the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator.

24. The ATDS used by Defendant also has the capacity to, and does, text telephone numbers from a list of databases of telephone numbers automatically and without human intervention.

25. The telephone number Defendant texted was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming text messages pursuant to 47 U.S.C. § 227 (b)(1).

26. These text messages made by Defendant were in violation of 47 U.S.C. § 227(b)(1). Further, these text messages invaded Plaintiff's privacy.

### STANDING

27. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendant;

    c. and is likely to be redressed by a favorable judicial decision.

    See, *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) at 6, *Lujan v. Defenders of Wildlife,* 504 U.S. 555 at 560; *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037.

28. In order to meet the above standard, Plaintiff must clearly allege facts demonstrating all three prongs above.

///

### A. *The "Injury in Fact" Prong*

29. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (Id.)*.

30. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant called Plaintiff on her cellular telephone using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

31. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016) at 7*. In this case, Defendant invaded Plaintiff's privacy and peace by texting her cellular telephone, and it did this with the use of an ATDS. Moreover, Defendant made these text messages at Plaintiff's expense: Plaintiff must now pay for Defendant's text messages to her cellular phone. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### B. *The "Traceable to the Conduct of Defendant" Prong*

32. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

33. The above text messages were directly and explicitly linked to Defendant. Defendant's text messages identify Defendant as "TLC Resorts," the party that attempted to collect the Debt and solicit employees. These text messages are the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that its injuries are traceable to the conduct of Defendant.

**C. *The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong***

34. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

35. In the present case, Plaintiff's Prayers for Relief include a request for damages for each text message made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

36. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016),* Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated ("the Class").

38. Plaintiff represents, and is a member of, the Class, consisting of: All persons within the United States who had or have a number assigned to a cellular telephone service, who received at least one text message using an ATDS from Defendant, or its agents texting on behalf of Defendant, between the date of the filing of this action and the four years preceding, where such text messages were placed for the purpose of collecting debts and marketing to the Class.

39. Defendant and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

40. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiff and the Class members via their cellular telephones thereby causing Plaintiff and the Class

members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, by having to retrieve or administer messages left by Defendant or its agents, during those illegal text messages, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

41. This suit seeks only damages for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

42. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records and/or Defendant's agent's records.

43. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   i. Whether, within the four years prior to the filing of the Complaint, Defendant made any text messages (other than a text message made for emergency purposes or made with the prior express written consent of the texted party) to the Class members using any ATDS to any telephone number assigned to a cellular telephone service;

   ii. Whether Defendant texted the Class for marketing purposes;

   iii. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation(s); and

   iv. Whether Defendant should be enjoined from engaging in such conduct in the future.

44. As a person who received text messages from Defendant in which Defendant used an ATDS, without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class because Plaintiff has no interests antagonistic to any member of the Class.

45. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.  The size of Class member's individual claims causes few, if any, Class members to be able to afford to seek legal redress for the wrongs complained of herein.

46. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

47. A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those that would be presented in numerous individual claims.

48. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

///

# FIRST CAUSE OF ACTION:
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

49. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. The foregoing acts and omissions of Defendant constitutes multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

51. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

52. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

# SECOND CAUSE OF ACTION:
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

53. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

54. The foregoing acts and omissions of Defendant constitute multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

55. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and each of the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

56. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

# PRAYER FOR RELIEF

57. Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and each Class member the following relief against Defendant:

**FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.**

58. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

60. Any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.**

61. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

62. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

63. Any other relief the Court may deem just and proper.

**TRIAL BY JURY**

64. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

Date: 6/28/18                                                                                   **Hyde & Swigart, APC**

By: /s/ Joshua B. Swigart
    Joshua B. Swigart, Esq.
    Attorney For Plaintiff

**Additional Attorneys**

**Kazerouni Law Group, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**Law Office of Daniel G. Shay**
Daniel G. Shay (State Bar No. 250548)
DanielShay@SanDiegoBankruptcyNow.com
409 Camino Del Rio South, Suite 101B
San Diego, CA  92108
Telephone: (619) 222-7429
Facsimile:  (866) 431-3292