# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPHELIA AUGUSTINE,<br><br>         Plaintiff,<br><br>v.<br><br>TLC RESORTS VACATION CLUB, LLC; and DOES 1 through 20,<br><br>         Defendants. | Case No.: 3:18-cv-01120-H-JMA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 7] |

  Before the Court is Defendant TLC Resorts Vacation Club, LLC's ("Defendant") motion to compel arbitration or, in the alternative, to dismiss for failure to state a claim, filed on July 16, 2018. (Doc. No. 7.) On August 6, 2018, Plaintiff Ophelia Augustine ("Plaintiff") opposed the motion. (Doc. No. 10.) On August 13, 2018, Defendant replied. (Doc. No. 13.) For the reasons discussed below, the Court grants Defendant's motion to compel arbitration.

## **BACKGROUND**

  Defendant is in the timeshare business, marketing vacation club membership programs in which members use points toward vacations and lodging at certain

destinations. (Doc. No. 7-2, Mullis Decl. ¶ 2.) In or around September 2014, Plaintiff attended a timeshare presentation by Defendant in Las Vegas. (Doc. No. 10-1, Augustine Decl. ¶ 6.) After the presentation was over, Plaintiff met with one of Defendant's salesmen and purchased a membership. (Id. ¶ 7.) Subsequently, Plaintiff allegedly incurred a financial obligation to Defendant as a result of unpaid timeshare membership dues ("the debt"). (Doc. No. 4 ¶ 13; see also Doc. No. 7-2, Mullis Decl. ¶ 4.) It is alleged that, in an effort to collect the debt and to promote a "marketing ploy," Defendant sent Plaintiff text messages in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et. seq.* (Doc. No. 4 ¶¶ 13-26.)

On June 1, 2018, Plaintiff initiated this putative class action against Defendant for violations of the TCPA. (Doc. No. 1.) Plaintiff filed a first amended complaint on June 28, 2018. (Doc. No. 4.) On July 16, 2018, Defendant filed a motion to compel arbitration and dismiss or, in the alternative, to dismiss for failure to state a claim upon which relief can be granted. (Doc. No. 7.) On August 6, 2018, Plaintiff opposed the motion, (Doc. No. 10), and on August 13, 2018, Defendant replied, (Doc. No. 13).

Moving to compel arbitration, Defendant submitted copies of several documents comprising Plaintiff's timeshare membership "enrollment packet," including a Membership Enrollment Agreement ("MEA"), Verification of Purchase, and Participation Agreement, each of which Plaintiff completed and signed in September 2014. (See Doc. No. 7-2, Mullis Decl. ¶ 7.) The only reference to arbitration among these documents is found in the one-page MEA, which provides, directly above Plaintiff's signature:

> As described more fully in the Club Rules, any disputes are subject to mandatory arbitration to take place in and around Clark County, Nevada.

(Doc. No. 7-2, Mullis Decl., Ex. A ("MEA").)

The MEA also provides that Plaintiff's timeshare membership "is governed by the Club Rules and the other Club Documents," and that Plaintiff has "reviewed and had the opportunity to ask questions regarding the Club Documents prior to paying any amount hereunder." (Id.)

Additionally, with its motion to compel, Defendant submitted a document titled "TLC Resorts Vacation Club LLC Club Rules," which provides, in pertinent part:

**13. GOVERNING LAW; ARBITRATION**

Membership is subject to the laws of the state of Nevada, and the state and federal courts of Clark County, Nevada, shall have exclusive subject matter and personal jurisdiction of all disputes arising in connection with your Membership. In acquiring a Membership, you hereby waive any jurisdictional venue or inconvenient forum objections to those courts.

Most concerns can be resolved quickly and effectively by calling [customer service] . . . . In the unlikely event that customer service is unable to resolve your concern, **we each agree to resolve any disputes through binding arbitration or small claims court instead of in courts of general jurisdiction. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. You agree that, by entering into this Agreement, you and the Club Manager are each waiving the right to a trial by jury or to participate in a class action.** For any non-frivolous claims that do not exceed $15,000 in the aggregate, Club Manager will pay all costs of the arbitration. However, you will remain responsible for your own attorneys fees and costs.

Club Manager and you agree to arbitrate **all disputes and claims** between us that can't otherwise be resolved through customer service (**"Dispute"**). This agreement to arbitrate is intended to be broadly interpreted, and Disputes include, but are not limited to:
- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory;
- claims that arose before this or any prior agreement (including, but not limited to, claims relating to advertising); . . .
- claims that may arise after the termination of this Agreement. . . .

**THE TERMS AND THIS AGREEMENT PROVIDE THAT ALL DISPUTES BETWEEN YOU AND THE CLUB MANAGER WILL BE RESOLVED BY BINDING ARBITRATION. . . . ACCORDINGLY, YOU GIVE UP AND WAIVE YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS OR HAVE YOUR DISPUTE HEARD BY A JURY. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS. YOUR RIGHTS**

**WILL BE DETERMINED BY AN ARBITRATOR AND NOT A JUDGE OR JURY. . . . .**

(Doc. No. 7-2, Mullis Decl., Ex. B ("Club Rules") (emphasis in original).) Defendant also filed a declaration by Stan Mullis, Defendant's owner and manager, who states under penalty of perjury that Exhibit B "is a true and correct copy of TLC's Club Rules that were provided to Plaintiff." (Id., Mullis Decl. ¶ 8.)

Plaintiff opposes Defendant's motion to compel arbitration on the grounds that she never entered into an agreement to arbitrate. In support of this argument, Plaintiff filed a declaration stating she was never provided with the Club Rules "at any point." (Doc. No. 10-1, Augustine Decl. ¶ 10.) She also claimed that she had no opportunity to read the Club Rules or any reason to investigate them because she believed "all substantive terms of the agreement were provided to [her] within the documents [she] executed." (Id. ¶ 15.) She "did not know, nor was [she] told by Defendant's representatives, that the TLC Club Rules contained such important terms, including prohibiting [her] access to the judicial system." (Id. ¶ 16.) She added that, "[a]t the time, [she] did not know what arbitration was." (Id. ¶ 17.) Thus, Plaintiff alleges there was no mutual assent to mandatory arbitration. Furthermore, Plaintiff argues that even if an agreement to arbitrate was formed, such an agreement is unconscionable and would not encompass the TCPA claims asserted in this action.

## DISCUSSION

### I. Legal Standards

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id.

A party moving to compel arbitration must show, by a preponderance of the evidence, "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted); see Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014). If the Court finds that these elements are satisfied, then the Court must compel arbitration. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

If there is a genuine dispute of material fact as the existence of a valid arbitration agreement or as to the agreement's applicability to the instant dispute, a district court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citation omitted). Thus, "[o]nly when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement." Id. (quoting Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991)). "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." Three Valleys, 925 F.2d at 1141 (citation omitted). "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" Anderson v. Credit One Bank, Nat'l Assoc., No. 16-cv-3125, 2018 WL 2287329, at *8 (S.D. Cal. May 18, 2018) (quoting Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011)).

Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not

by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation and internal quotation marks omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). But "the liberal federal policy regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement." Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1291 (9th Cir. 2017) (citations omitted).

## II. Analysis

Opposing Defendant's motion to compel, Plaintiff argues there was no mutual assent to mandatory arbitration and that, even if a valid agreement existed, the Club Rules arbitration provision is unconscionable. (Doc. No. 10 at 3-19.) She further argues that the purported arbitration agreement does not encompass her TCPA claims. (Id. at 20-22.)

### A. Existence of Agreement to Arbitrate

As the party moving to compel arbitration, Defendant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." See Norcia, 845 F.3d at 1283. To determine whether an agreement to arbitrate exists, the Court applies "ordinary state-law principles that govern the formation of contracts." Id. (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). As explained below, the Court applies Nevada state law.

#### 1. Choice of Law

The Membership Enrollment Agreement and Club Rules provide that Nevada law governs Plaintiff's membership. (See Doc. No. 7-2, Ex. A, MEA ("The Membership Documents shall be governed by the laws of Nevada, without regard to the conflict of law principles."); Id., Ex. B, Club Rules ¶ 13 ("Membership is subject to the laws of the state of Nevada.").) Citing these provisions, Defendant argues that Nevada law applies, but Plaintiff maintains that California law applies because Plaintiff is a California resident and

6

3:18-cv-01120-H-JMA

by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation and internal quotation marks omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). But "the liberal federal policy regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement." Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1291 (9th Cir. 2017) (citations omitted).

## II. Analysis

Opposing Defendant's motion to compel, Plaintiff argues there was no mutual assent to mandatory arbitration and that, even if a valid agreement existed, the Club Rules arbitration provision is unconscionable. (Doc. No. 10 at 3-19.) She further argues that the purported arbitration agreement does not encompass her TCPA claims. (Id. at 20-22.)

### A. Existence of Agreement to Arbitrate

As the party moving to compel arbitration, Defendant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." See Norcia, 845 F.3d at 1283. To determine whether an agreement to arbitrate exists, the Court applies "ordinary state-law principles that govern the formation of contracts." Id. (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). As explained below, the Court applies Nevada state law.

#### 1. Choice of Law

The Membership Enrollment Agreement and Club Rules provide that Nevada law governs Plaintiff's membership. (See Doc. No. 7-2, Ex. A, MEA ("The Membership Documents shall be governed by the laws of Nevada, without regard to the conflict of law principles."); Id., Ex. B, Club Rules ¶ 13 ("Membership is subject to the laws of the state of Nevada.").) Citing these provisions, Defendant argues that Nevada law applies, but Plaintiff maintains that California law applies because Plaintiff is a California resident and

6
3:18-cv-01120-H-JMA

by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation and internal quotation marks omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). But "the liberal federal policy regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement." Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1291 (9th Cir. 2017) (citations omitted).

## II. Analysis

Opposing Defendant's motion to compel, Plaintiff argues there was no mutual assent to mandatory arbitration and that, even if a valid agreement existed, the Club Rules arbitration provision is unconscionable. (Doc. No. 10 at 3-19.) She further argues that the purported arbitration agreement does not encompass her TCPA claims. (Id. at 20-22.)

### A. Existence of Agreement to Arbitrate

As the party moving to compel arbitration, Defendant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." See Norcia, 845 F.3d at 1283. To determine whether an agreement to arbitrate exists, the Court applies "ordinary state-law principles that govern the formation of contracts." Id. (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). As explained below, the Court applies Nevada state law.

#### 1. Choice of Law

The Membership Enrollment Agreement and Club Rules provide that Nevada law governs Plaintiff's membership. (See Doc. No. 7-2, Ex. A, MEA ("The Membership Documents shall be governed by the laws of Nevada, without regard to the conflict of law principles."); Id., Ex. B, Club Rules ¶ 13 ("Membership is subject to the laws of the state of Nevada.").) Citing these provisions, Defendant argues that Nevada law applies, but Plaintiff maintains that California law applies because Plaintiff is a California resident and

the Retail Installment Agreement lacks a forum selection clause. The Court agrees with Defendant.

"[W]here jurisdiction is based on the existence of a federal question, 'federal common law applies to the choice-of-law rule determination.'" Coppock v. Citigroup, Inc., No. C11–1984–JCC, 2013 WL 1192632, at *2 (W.D. Wash. Mar. 22, 2013) (quoting Dougherty v. Experian Info. Sols., Inc., 847 F. Supp. 2d 1189, 1194 (N.D. Cal. 2012)). Federal common law follows the Restatement (Second) of Conflict of Laws. See Chuidian v. Philippine Nat'l Bank, 976 F.2d 561, 564 (9th Cir. 1992). Thus, courts honor the parties' choice-of-law unless: (1) "the chosen state has no substantial relationship to the parties or the transaction," or (2) honoring the parties' choice "would be contrary to a fundamental policy of a state that has a materially greater interest" in the dispute. Restatement (Second) of Conflicts of Laws § 187(2) (1988).

Here, both the Membership Enrollment Agreement, signed by Plaintiff, and the Club Rules contain a choice-of-law provision specifying that Nevada law applies. The Court finds that Nevada has a substantial relationship to this dispute, given that Plaintiff attended Defendant's sales presentation and purchased her timeshare membership in Las Vegas, and that application of Nevada law would not be contrary to any fundamental California policy. Additionally, Plaintiff contends that the outcome in this case is the same whether the Court applies Nevada or California law. In sum, Nevada law applies to this dispute.

### 2. Whether Agreement to Arbitrate Exists Under Nevada Law

Defendant bears the burden of showing the existence of an arbitration agreement by a preponderance of the evidence. See Norcia, 845 F.3d at 1283. Under Nevada law, "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except as otherwise provided in [Nevada Revised Statutes section] 597.995 or upon a ground that exists at law or in equity for the revocation of a contract." Nev. Rev. Stat. § 38.219. Thus, section 38.219 is consistent with section 2 of the FAA, which provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." See <u>Tallman v. Eighth Judicial Dist. Court</u>, 359 P.3d 113, 118 (Nev. 2015) (quoting 9 U.S.C. § 2).

Here, Defendant has submitted a copy of Plaintiff's signed, one-page Membership Enrollment Agreement, or MEA. Directly above Plaintiff's signature on the MEA is the arbitration term: "As described more fully in the Club Rules, any disputes are subject to mandatory arbitration to take place in and around Clark County, Nevada." (Doc. No. 7-2, Mullis Decl., Ex. A.) In signing the MEA, Plaintiff acknowledged that her timeshare membership was "governed by the Club Rules and the other Club Documents," and that she had "reviewed and had the opportunity to ask questions regarding the Club Documents prior to paying any amount hereunder." (<u>Id.</u>) Defendant has also submitted a copy of its Club Rules, which contain a more detailed arbitration provision. (<u>See</u> Doc. No. 7-2, Mullis Decl., Ex. B.)

Defendant's sales manager, who was present when Plaintiff purchased her timeshare membership in Las Vegas, declares under penalty of perjury that "[d]uring the enrollment [process], representatives will review the enrollment forms with the guest, make sure that everything is clear and understood, [and] ensure that the documents are executed." (Doc. No. 13-1, Sayegh Decl. ¶ 6.) In addition, "[b]uyers are provided copies of all documents they sign and an electronic copy of the Club Rules (on a DVD)." (<u>Id.</u> ¶¶ 2-3.) He also states that Defendant's sales representatives "always point out that [they] are including a copy of the [Club Rules] via DVD." (<u>Id.</u> ¶ 7.) To the best of his recollection, "these standard procedures were followed when the Plaintiff enrolled." (<u>Id.</u> ¶¶ 7-8.) Moreover, Defendant's owner and manager states in his declaration that the Club Rules "were provided to Plaintiff." (Doc. No. 7-2, Mullis Decl. ¶ 8.)

This evidence is sufficient to meet Defendant's burden. Plaintiff does not deny that she signed the MEA, which contains a mandatory arbitration term and expressly references the Club Rules. Indeed, the MEA provides that Plaintiff "reviewed and had the opportunity to ask questions regarding the Club Documents." (Doc. No. 7-2, Ex. A.)

//

Although Plaintiff maintains she never saw the arbitration term and did not understand what arbitration was, (Doc. No. 10-1, Augustine Decl. ¶ 17), she is still bound by the term. See Campanelli v. Conservas Altamira, S.A., 477 P.2d 870, 872 (Nev. 1970) ("He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them, and there can be no evidence for the jury as to his understanding of its terms." (citation omitted)). Moreover, in light of the MEA's mandatory arbitration term and Plaintiff's acknowledgment that she had "reviewed and had the opportunity to ask questions regarding the Club Documents," as well as the declarations submitted by Defendant's president and sales manager, Plaintiff's self-serving assertion that she never received a copy of the Club Rules is alone insufficient to establish a genuine issue of fact as to whether she assented to mandatory arbitration. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986) (holding a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party). Furthermore, the fact that the Club Rules are unsigned is of no moment. See Tallman, 359 P.3d at 119 ("While NRS 38.219(1) requires that the arbitration agreement be 'contained in a record' it does not require that the written record of the agreement to arbitrate be signed.").

Also unavailing is Plaintiff's argument that no valid agreement exists because her contract did not contain a "written specific authorization" for arbitration, as required by section 597.995 of the Nevada Revised Statutes. (Doc. No. 10 at 7-8.) Section 597.995 provides that an agreement requiring arbitration is void and unenforceable unless it includes "specific authorization for the provision which indicates that the person has affirmatively agreed to the provision." Nev. Rev. Stat. § 597.995(1). But the Supreme Court has made clear that courts may not "invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." Doctor's Assocs., Inc. v. Casarrotto, 517 U.S. 681, 687 (1996). Rather, states must place arbitration provisions "upon the same footing as other contracts." Id. (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)).

The Nevada Supreme Court has not addressed whether section 597.995 is preempted by the FAA, see Fat Hat, LLC v. DiTerlizzi, 385 P.3d 580, 2016 WL 5800335, at *1 n.1 (Nev. 2016) (unpublished table decision), but two district courts have concluded that the FAA indeed preempts this provision of Nevada law, see Johnson v. Electrum Partners LLC, No. 17 Civ. 7823, 2018 WL 3094918, at *11 (S.D.N.Y. June 21, 2018); JusTours, Inc. v. Bogenius Group, LLC, No. 2:17–cv–0078, 2017 WL 3671285, *3-4 (D. Nev. Aug. 25, 2017). Furthermore, the Nevada Supreme Court has held that the FAA preempts a requirement that an arbitration clause must be conspicuous to be enforceable. U.S. Home Corp. v. Michael Ballesteros Tr., 415 P.3d 32, 40-41 (Nev. 2018) ("Requiring an arbitration clause to be more conspicuous than other contract provisions . . . is exactly the type of law the Supreme Court has held the FAA preempts because it imposes stricter requirements on arbitration agreements than other contracts generally."). Similarly, here, because section 597.995 of Nevada law "places arbitration agreements in a class apart from 'any contract,' and singularly limits their validity," it is very likely preempted by the FAA. See Casarrotto, 517 U.S. at 687-88 (holding the FAA preempted provision under Montana law that "conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally."). The Court therefore does not find the arbitration term invalid on this ground.

In sum, the Court determines that Defendant has carried its burden to show the existence of an agreement to arbitrate.

### B. Validity of Agreement to Arbitrate

Plaintiff next argues that any agreement to arbitrate in this case is unconscionable because it contains overly harsh terms. (Doc. No. 10 at 15.) Nevada espouses "a strong public policy in favor of arbitration, and arbitration clauses are generally enforceable," Echevarria-Hernandez v. Affinitylifestyles.com, Inc., No. 2:16-cv-00943, 2017 WL 1160571, at *2 (D. Nev. Mar. 27, 2017), but courts may invalidate unconscionable arbitration provisions if both procedural and substantive unconscionability are present, U.S. Home Corp., 415 P.3d at 40-41. Accordingly, the Court evaluates Plaintiff's

arguments regarding procedural and substantive unconscionability in turn.

With regards to procedural unconscionability, Plaintiff argues that her contract with Defendant was a contract of adhesion, formed after "hours of relentless sales' pitch." (Doc. No. 10 at 15.) She also reiterates her claim that she had no knowledge of the MEA's mandatory arbitration term or of the Club Rules. (Id. at 15-16.) As a preliminary matter, the Court recognizes the Nevada Supreme Court's recent admonishment that application of procedural unconscionability rules may not disfavor arbitration agreements more than any other type of contract. See U.S. Home Corp., 415 P.3d at 42. On those grounds, the Nevada Supreme Court overruled two of its earlier decisions that established procedural unconscionability rules that "either apply only to arbitration agreements or, in practice, have a disproportionate effect on arbitration agreements." Id. (overruling Gonski v. Second Judicial Dist. Court, 245 P.3d 1164 (Nev. 2010); D.R. Horton, Inc. v. Green, 96 P.3d 1159 (Nev. 2004)).

A contract of adhesion is defined as "a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain." Obstetrics & Gynecologists v. Pepper, 693 P.2d 1259, 1260 (Nev. 1985). "The distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms." Id. (citing Wheeler v. St. Joseph Hosp., 63 Cal. App. 3d 345 (1976)). An adhesion contract is not necessarily unenforceable "if it falls within the reasonable expectations of the weaker or 'adhering' party and is not unduly oppressive." Id. at 1261 (citing Graham v. Scissor-Tail, Inc., 623 P.2d 165, 172-173 (Cal. 1981)). Defendant does not deny that its contract with Plaintiff was one of adhesion, but it does deny that Plaintiff was subject to "high pressure" sales tactics. (Doc. No. 13 at 5.) At any rate, the adhesive nature of the arbitration agreement suggests that a degree of procedural unconscionability characterized the parties' agreement.

Turning to substantive unconscionability, "[a] contract is unconscionable only when the clauses of that contract and the circumstances existing at the time of the execution of the contract are so one-sided as to oppress or unfairly surprise an innocent party." Bill

Stremmel Motors, Inc. v. IDS Leasing Corp., 514 P.2d 654, 657 (Nev. 1973). Plaintiff makes several unavailing arguments on this point, including that the burden of arbitrating in Nevada "is overly harsh and oppressive" because she lives in California, and that the scope of the Club Rules arbitration clause is overbroad. (Doc. No. 10 at 17-19.)

Plaintiff cites no Nevada authority, and this Court is aware of none, suggesting that mere inconvenience and expense are sufficient to establish substantive unconscionability. Cf. Smith, Valentino & Smith, Inc. v. Superior Court, 551 P.2d 1206, 1209 (Cal. 1976) ("Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things." (citation omitted)). Plaintiff's arguments regarding the Club Rules arbitration clause's breadth are also unpersuasive. Plaintiff relies on a case from this District, In re Jiffy Lube International, Inc., 847 F. Supp. 2d 1253 (S.D. Cal. 2012), but that case is factually distinguishable and did not involve application of Nevada law—or California law, for that matter. See id. at 1261-63 (holding arbitration clause in "Pledge of Satisfaction" for Plaintiff's oil change was unconscionable because clause mandated arbitration of TCPA claim based on unauthorized text messages offering discount on Jiffy Lube services). Moreover, "numerous courts in Nevada and other states have found arbitration provisions containing equally broad language concerning the scope of the provision to be conscionable and enforceable." Rodriguez v. AT&T Servs., Inc., No. 2:14-cv-01537, 2015 WL 6163428, at *6 (D. Nev. Oct. 20, 2015) (collecting cases). And the Supreme Court's holding in "Concepcion weighs sharply against holding that the waiver of other representative, collective, or class action claims . . . is unconscionable." Poublon, 846 F.3d at 1264; see Concepcion, 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

Furthermore, the Club Rules arbitration clause is bilateral ("[W]e each agree to resolve any disputes through binding arbitration or small claims court instead of in courts of general jurisdiction"); provides that Plaintiff will select the arbitrator from a panel

1  chosen by Defendant from the American Arbitration Association's (AAA) pool of
2  arbitrators; and establishes that AAA rules currently in effect will apply to any arbitration.
3  (Doc. No. 7-2, Ex. B, Club Rules ¶ 13.) These provisions weigh against a finding of
4  substantive unconscionability. Cf. Burch v. Second Judicial Dist. Court, 49 P.3d 647, 650-
5  51 (Nev. 2002) (finding arbitration clause substantively unconscionable where it granted
6  one party "the unilateral and exclusive right to decide the rules that govern the arbitration
7  and to select the arbitrators"). The Court concludes that, under the circumstances, the Club
8  Rules arbitration clause is not substantively unconscionable. Because Plaintiff has not
9  shown the existence of procedural and substantive unconscionability, the arbitration clause
10 may be enforced under Nevada law. See U.S. Home Corp., 415 P.3d at 40-41.

**C. Scope of Agreement to Arbitrate**

In addition to showing the existence of an agreement to arbitrate, Defendant must establish that the agreement encompasses the dispute at issue. See Ashbey, 785 F.3d at 1323. Plaintiff asserts that the Club Rules arbitration clause does not encompass her TCPA claims because "such tort claims have no relationship to, and do not touch matters covered by, the credit related matters, including a purchase of the timeshares, or any related transaction or resulting relationship." (Doc. No. 10 at 20.)

Sensibly enough, "[t]he scope of the claims governed by an arbitration clause depends on the language used in the clause." Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013). The Court must resolve any doubts about the scope of arbitrable issues in favor of arbitration. See Poublon, 846 F.3d at 1259. Here, the MEA's arbitration term provides that, "[a]s described more fully in the Club Rules, any disputes are subject to mandatory arbitration." (Doc. No. 7-2, Ex. A, MEA.) The Club Rules, in turn, provide:

//
//
//
//

> Club Manager and you agree to arbitrate **all disputes and claims** between us that can't otherwise be resolved through customer service (**"Dispute"**). This agreement to arbitrate is intended to be broadly interpreted, and Disputes include, but are not limited to:
> - claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory;
> - claims that arose before this or any prior agreement (including, but not limited to, claims relating to advertising); . . .
> - claims that may arise after the termination of this Agreement. . . .

(Doc. No. 7-2, Ex. B, Club Rules ¶ 13 (emphasis in original).)

Given the circumstances of this case and the plain, broad language of the arbitration provision, as well as the strong presumption in favor of arbitration, the Court concludes that Plaintiff's claims fall within the scope of the arbitration provision. See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

In conclusion, Defendant has carried its burden to show, by a preponderance of the evidence, that "a valid, written agreement to arbitrate" exists and that the agreement "encompasses the dispute at issue." See Ashbey, 785 F.3d at 1323. Plaintiff has not established a genuine issue of material fact as to the existence of the agreement or the agreement's applicability to the instant dispute. See Concat, 350 F. Supp. 2d at 804. Accordingly, the Court must compel arbitration.[1] See Dean Witter Reynolds, 470 U.S. at 218.

//

//

---

[1] Because the Court finds that the arbitration agreement is enforceable and grants Defendant's motion to compel arbitration, the Court need not address Defendant's alternative argument that the complaint should be dismissed for failure to state a claim. (See Doc. No. 7-1 at 9-12.)

## **CONCLUSION**

For the reasons discussed above, the Court **GRANTS** Defendant's motion to compel arbitration. Plaintiff and Defendant are hereby **ORDERED** to proceed to arbitration in accordance with the terms of the agreement. The Court continues all dates, if any, until the completion of arbitration but reserves the right to dismiss the action if the parties do not diligently pursue their claims before the arbitrator, or for any reason justifying dismissal.

**IT IS SO ORDERED.**

DATED: August 16, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT